UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
In re

                                        Chapter 7

Cassandra Christine Kelley-Gershon        Case No. 23-74643-ast
*aka* Cassandra Christine Kelley
*aka* Cassandra C Kelley-Gershon,

              Debtor.
------------------------------------------------x

## DECISION AND ORDER APPROVING TRUSTEE'S PROFESSIONAL'S FEES

### *Issues Before the Court and Summary of Ruling*

Pending before the Court is the application of the chapter 7 trustee, Robert L. Pryor (the "Trustee"), seeking payment of his counsel's professional fees in this dismissed case (the "Fee Application"). Debtor, Cassandra Christine Kelley-Gershon ("Debtor"), filed opposition to the Fee Application. For the reasons set forth herein, the Court grants the Fee Application in part.

### *Factual and Procedural History*

On December 11, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). [Dkt. No. 1] On the same date, Robert L. Pryor was appointed interim chapter 7 trustee.

On January 10, 2024, the first meeting of creditors was held pursuant to section 341(a) of the Bankruptcy Code, at which time the Trustee qualified as the permanent trustee.

On January 12, 2024, with various deficiencies under section 521 still pending, Debtor filed an emergency motion to enforce the automatic stay (the "Emergency Motion"). [Dkt. No. 8] Specifically, Debtor sought to stop a matrimonial employment assessment scheduled for January 15, 2024, a deposition scheduled for January 16, 2024, and a matrimonial court hearing scheduled for January 17, 2024.

On January 16, 2024, the Court ordered that a hearing on the Emergency Motion be held, but in order to provide adequate due process notice for Debtor's non-filing spouse, Bernard Gershon ("Gershon"), scheduled the hearing for February 15, 2024. [Dkt. No. 10] The Trustee filed a response to the Emergency Motion on February 8, 2024, and Gershon filed an objection on February 8, 2024. [Dkt. Nos. 24 & 26]

On January 23, 2024, the Trustee filed an application o retain the law firm, Pryor & Mandelup L.L.P. (the "Firm"), as general counsel to the Trustee (the "Retention Application"). [Dkt. No. 22] The United States Trustee did not object to the Firm's retention as general counsel to the Trustee.

On January 23, 2024, Debtor filed a complete set of schedules. [Dkt. No. 20]

On January 30, 2024, the Court entered an order authorizing the Trustee to retain the Firm as general counsel to the Trustee (the "Retention Order"). [Dkt. No. 23]

On February 13, 2024, two days before the hearing on the Emergency Motion was scheduled to be heard, Debtor sent an *ex parte* email communication to the Court requesting an adjournment. The Court adjourned the hearing on the Emergency Motion to March 7, 2024.

The Court held the hearing on the Emergency Motion on March 7, 2024. Debtor alleged the stay was violated by the post-petition taking of her deposition. The Court directed that it would deny the Emergency Motion as moot and grant relief from the automatic stay to allow the matrimonial action to proceed in the state court. The Court reserved ruling on the issue of whether the post-petition activities of Gershon and GershonMedia Inc. (together, the "Gershon Parties") constituted a stay violation and directed the parties to submit the transcript of the deposition taken post-petition. On March 19, 2024, the Court entered an order consistent with its bench ruling. [Dkt. No. 40]

On March 4, 2024, the Gershon Parties, filed a motion to dismiss this case (the "MTD"). [Dkt. No. 33] The Court set a hearing on the MTD for April 9, 2024. On April 4, 2024, the Trustee filed opposition to the MTD. [Dkt. No. 43] On April 5, 2024, the Gershon Parties filed a reply to the Trustee's opposition to the MTD. [Dkt. No. 51]

On April 8, 2024, the day before the MTD was scheduled to be heard and nearly four months after she voluntarily invoked the protections of the bankruptcy process, Debtor filed a letter of no objection to the MTD and her own motion to dismiss this case. [Dkt. Nos. 53 & 54]

On April 9, 2024, the Court held a hearing on the MTD. The Court found that the nature of the filing, the apparent strategic use of the bankruptcy process, Debtor's complete lack of respect for the Court process, and Debtor's substantial assets, significantly outweighing any disclosed claims, warranted dismissal of this case with prejudice for two years.

By order dated April 19, 2024, the Court dismissed Debtor's case prior to any assets being liquidated or any distributions being made, and further held that the Trustee's professionals may file a motion seeking payment from Debtor for compensation of any fees and out of pocket expenses incurred in this chapter 7 case. [Dkt. No. 58]

On April 17, 2024, the Trustee filed the Fee Application seeking an award of attorneys' fees in the amount of $64,472.50 and reimbursement of expenses in the amount of $270.44 (the "Fee Application"). [Dkt. No. 56] The Fee Application was scheduled to be heard on May 21, 2024 .

On May 20, 2024, Debtor sent an *ex parte* email communication to the Court requesting an adjournment. The Court canceled the hearing and extended the deadline for Debtor to file a written response to the Fee Application to May 31, 2024. [Dkt. 60] Debtor filed her response on May 31, 2024. [Dkt. No. 61]

*Discussion*

Among the many duties imposed on a chapter 7 trustee by the Bankruptcy Code is the duty to "investigate the financial affairs of the debtor." 11 U.S.C. § 704(a)(4). The Trustee had no easy feat in this case. Debtor filed her bankruptcy petition amidst a long running, contentious matrimonial proceeding pending in New York State Court. She waited nearly five (5) weeks to file her schedules. Debtor's scheduled total assets of $26,823,538 and liabilities totaling about $2,505,470.[1] Among Debtor's largest claimed assets is an interest in real property owned by a limited liability company, X2SEA LLC ("X2SEA"). Debtor and Gershon apparently shared 50/50 ownership of X2SEA. She also disclosed that significant assets were held in escrow by order of the state court, and subject to division.

Debtor claimed $9,500.00 of monthly income and $13,916.02 of monthly expenses. Those monthly expenses include $6,919.00 of rent and rental expenses, $1,075.00 of food and housekeeping supplies, $731.00 of personal care products and services, $1,967.00 of medical and dental expenses, $932.00 of transportation costs, excluding car payments, and $613.00 of entertainment.

The Firm bases its request for compensation on two theories: (1) sanctions under this Court's inherent powers and (2) reasonableness under section 330 of the Bankruptcy Code. The Court has considered Debtor's opposition and finds most of her arguments are without merit but has considered whether the fees are reasonable or are in any manner excessive as Debtor argues.[2]

---

[1] Debtor's schedules are handwritten, and the last digit of the dollar amount is illegible.
[2] Debtor uses her response primarily as an opportunity to reargue the dismissal of her bankruptcy, her potential claims against GershonMedia Inc., and to attack the credibility of Mr. Gershon and her former attorneys. Debtor also briefly mentions that she did not seek to leave bankruptcy; however, she moved to dismiss her case on April 8, 2024. [Dkt. No. 54] That motion was found moot after the April 9, 2024, hearing.

### A. *Bankruptcy Rule 9011 Sanctions*

Under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9011, all pleadings are presented to the Court with the certification that:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. BANKR. P. 9011(b).

Bankruptcy Rule 9011 allows a party to move the Court to impose sanctions against any party that violates Rule 9011(a). However, Bankruptcy Rule 9011(c) typically requires a notice be sent out to the party against whom sanctions is sought 21 days before filing a motion for sanctions. *See In re Hoffman*, 403 B.R. 237 (Bankr. E.D.N.Y. 2009). This "safe harbor" provision allows the allegedly offending party an opportunity to withdraw or correct the challenged submission. *See id*. This service requirement demonstrates "the importance of according fair procedural protections to an attorney or other party facing sanctions." *In re Belmonte*, 524 B.R. 17, 30 (Bankr. E.D.N.Y. 2015) (citing *In re Highgate Equities, Ltd.*, 279 F.3d 148, 152 (2d Cir. 2002)).

However, and critical here, the 21-day safe harbor does not apply where "the conduct alleged is the filing of a petition in violation of subdivision (b)." FED. R. BANKR. P. 9011(c)(1)(A). The sanctions being considered here are for Debtor's bad faith filing of her petition.

"[I]nherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999)). Further,

> [c]onduct is entirely without color when it lacks any legal or factual basis; it is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue. A finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings.

*Id.* (citations omitted). Here, by filing and signing her petition under the penalty of perjury, Debtor represented that the petition was not filed for an improper purpose.

Debtor's filing for chapter 7 relief is in bad faith and "entirely without color" given that her reported assets are ten times her scheduled liabilities.[3] Even setting aside the $17,650,000 Debtor asserts as potential claims against her estranged husband, Debtor's claimed total assets outweigh her liabilities by over $6,600,000. Debtor's monthly income of $9,500 paired with monthly expenses of $13,916.02 further highlights her lack of good faith in this filing. *See In re Campbell*, No. 11-70038-ast, 2012 WL 360031, at *7–*12, 2012 Bankr. LEXIS 636, at *19–*32 (Bankr. E.D.N.Y. Feb. 1, 2012).

Without making any substantial progress in her bankruptcy case, Debtor filed the Emergency Motion seeking to enforce the automatic stay to avoid multiple matrimonial action proceedings scheduled only days later, including an employment assessment, a deposition, and a court hearing. Debtor's filing was aimed at causing delay of and/or gaining some strategic advantage in her matrimonial proceedings.

---

[3] On Schedule A/B, Debtor listed $26,823,538 of total assets. On Schedule D, Debtor listed total liabilities of $2,505,470.

Debtor's strategic use of the bankruptcy system wasted the Firm's time and resulted in substantial fees being incurred. Accordingly, the Firm is entitled to reasonable compensation from Debtor for the fees and expenses it incurred in assisting the Trustee in discharging his obligations created by Debtor seeking bankruptcy protection both under Rule 9011 and this Court's inherent powers.

### B. Sections 327(a), 330(a)(1), 330(a)(3), 328(a) of the Bankruptcy Code allow reasonable compensation

Section 327 of the Bankruptcy Code authorizes a bankruptcy trustee to employ, "one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties. . ." 11 U.S.C. § 327(a).

Section 330 of the Bankruptcy Code governs the compensation of professionals in a bankruptcy case. *See id.* § 330. Section 330(a)(1) provides that

> (1) After notice to the parties in interest and the United States Trustee and a hearing … the court may award to … a professional person employed under section 327 or 1103—
>
> (A) reasonable compensation for actual, necessary services rendered by the … attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

*See id.* § 330(a)(1).

When determining the amount of reasonable compensation to be awarded to a professional, the Court is directed to consider all relevant factors, including

> (A)  the time spent on such services;
> (B)  the rates charged for such services;
> (C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

>   (D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>   (E)  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>   (F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3).

This Court could not find any case law which determined whether a court may award fees to a trustee's professionals in a dismissed chapter 7 case where no distributions were made. This Court does note that case law is divided on whether a chapter 7 trustee herself may be compensated in a case in which she does not make any distributions. *See In re Philips*, 507 B.R. 2, 5 (Bankr. N.D. Ga. 2014) (citing *In re Silvus*, 329 B.R. 193 (Bankr. E.D. Va. 2005)). The split in decisions on that issue is primarily due to section 330's language conditioning trustee compensation on the formula laid out in section 326, which is based upon money disbursed to creditors. *See In re Cummings*, 659 B.R. 895, 902–06 (Bankr. D.N.M. 2024). However, while section 330(a)(1) limits compensation of a trustee's professionals to what is "reasonable," the statute on its face does not require that distributions be made by the trustee in order for her professionals to be compensated, whether the case is dismissed or converted to another chapter.

A failure to compensate a chapter 7 trustee's professionals in these circumstances would conflict with Congress's intent to oust bad-faith filers from chapter 7 and to promote use of chapter 13 by debtors who can afford to make meaningful payments to creditors. *See In re Pivinski*, 366 B.R. 285, 290 (Bankr. D. Del. 2007) (citing *In re Moore*, 235 B.R. 414, 416 (Bankr. W.D. Ky. 1999)); *see also In re Campbell*, 2012 WL 360031, at *4 (Bankr. E.D.N.Y. Feb. 1, 2012).

Here, the Firm was duly retained under section 327 of the Bankruptcy Code pursuant to the Retention Order. Accordingly, the Firm is entitled to reasonable compensation under section 330 of the Bankruptcy Code for its services and actual expenses.

### C. Reasonable Compensation

Debtor's argument that the fees are entirely excessive must fail. In determining whether services were reasonable and necessary, courts should not punish chapter 7 trustees for the difficulties they may encounter by applying the "benefit of hindsight." *See In re Kohl*, 421 B.R. 115, 128 (Bankr. S.D.N.Y. 2009). In determining whether fees are reasonable, courts in the Second Circuit utilize the *Lodestar* analysis which requires the Court to "multiply[] the number of hours expended on the case by a reasonable billing rate[.]" *See In re Kohl*, 421 B.R. at 131.

Whether under a traditional fee analysis or under a sanctions analysis, the Firm's requested fees are reasonable for the most part. Debtor invoked the protections of the bankruptcy process and sat in chapter 7 for four months. Debtor waited to file her letter of no opposition to dismissal only one day before the dismissal hearing. Debtor's conduct contributed to the need for the Firm's continued services to the Trustee to locate and liquidate assets to pay creditors.

Looking to hours expended, the Court notes that the investigation of Debtor's finances in this case was difficult and complicated by the ongoing matrimonial proceedings and existence of holding companies which owned Debtor's "main" assets. The Firm seeking 9.9 hours of billable work for the initial analysis of the case and documents is clearly justified.

The remainder of the Fee Application seeks 28.2 hours responding to the Emergency Motion, 9.9 hours preparing and filing an adversary complaint seeking to dissolve and liquidate Debtor's interest in the X2SEA LLC pursuant to section 363(h), 20.3 hours for the motion of turnover of Debtor's escrow, 42.6 hours opposing the MTD, and 3.0 hours for the preparation of

the Fee Application, for total fees in the amount of $64,472.50. The Firm's requested hourly rates are reasonable based on the typical hourly rates charged by similarly qualified attorneys within this district.[4]

Being fully aware of the tasks undertaken and the effort expended, the Court does find it appropriate to reduce the overall requested fees by 15%, primarily in the hours expended on responding to the Emergency Motion and for the opposition to the MTD, to an award of $51,578.

The Firm also seeks actual and necessary expenses of $270.44, which the Court finds reasonable and necessary.

Thus, of the total request of $64,742.94, the Court awards $51,848.44.

*Conclusion*

The Firm's efforts in this matter are commendable and were directly incurred from Debtor's bad faith filing. Awarding the fees requested (albeit reduced as set forth herein) and reimbursement of expenses as requested in the Fee Application is based on this Court's inherent powers, Rule 9011, Section 330, and balancing the interests of justice between Debtor's bad-faith filing with the good-faith work on behalf of the Trustee representing the rights of creditors. As such, it is hereby

**ORDERED**, that the Fee Application is granted to the extent set forth herein; and it is further

---

[4] The Court declines to now address Debtor's request for sanctions against the Gershon Parties for an alleged stay violation in a case that should never have been filed. She exhibited disrespect for the Court process during the hearings that were held. It is unclear from the papers provided to this Court whether a stay violation did in fact occur. Further, during her matrimonial deposition, rather than simply answer questions, Debtor repeatedly told opposing counsel that he should go on Ozempic.

**ORDERED**, that the Firm is awarded compensation in the amount of $51,578 and reimbursement of expenses in the amount of $270.44 for reasonable and necessary fees and expenses; and it is further

**ORDERED**, that the award hereunder survives the dismissal of this case as a personal liability of Debtor; and it is further

**ORDERED**, that the Firm shall have the rights of any creditor under non-bankruptcy law.



Dated: August 22, 2024
Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge